UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| HARRY E. MORRISON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:17-CV-00914-MGG |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff, Harry E. Morrison, Jr., seeks judicial review of the Social Security Commissioner's decision that he is not entitled to Title II Disability Insurance Benefits under the Social Security Act. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c). For the reasons below, the Court affirms the Commissioner's decision.

**I. RELEVANT BACKGROUND**

In an application for Disability Insurance Benefits ("DIB") filed with the Social Security Administration ("SSA") on January 21, 2014, Morrison sought disability benefits based upon his impairments of depression, anxiety, back problems, and asthma. He alleged an onset of disability starting September 29, 2012, at which time he was 51 years old and had last worked as a casting machine operator. Morrison had worked since he was about 16 years old and posted earnings for the 32 years before his

alleged onset date. Morrison had even returned to work after suffering a heart attack and enduring multiple back surgeries.

### A. Procedure

SSA denied his claim initially on May 30, 2014, and again upon reconsideration on August 29, 2014. Morrison testified at a hearing before an administrative law judge ("ALJ") on January 26, 2017. A medical expert and vocational expert also testified at the ALJ hearing. On February 15, 2017, the ALJ issued her decision finding that Morrison was not disabled as defined by the Social Security Act. On October 3, 2017, the Social Security Appeals Council denied Morrison's request for review, making the ALJ's decision denying benefits the final decision of the Commissioner of Social Security.

On December 2, 2017, Morrison filed a complaint in this Court seeking reversal or remand of the Commissioner's decision. Morrison filed his initial brief in this matter on April 27, 2018. On August 3, 2018, the Commissioner filed a response requesting that the Court affirm the decision denying benefits. This matter became ripe on August 20, 2018, without any reply brief being filed.

### B. The ALJ's Decision

Under the Social Security Act, individuals are deemed "disabled" if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When determining whether a claimant is "disabled," an ALJ must follow the five-step sequential evaluation process outlined in the agency's

regulations. *See* 20 C.F.R. § 404.1520(a)(4). The five-step process requires the ALJ to determine

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (*citing* 20 C.F.R. § 404.1520). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

Here, the ALJ found at Step One that Morrison had not engaged in substantial gainful activity since the alleged onset date of September 29, 2012.

At Step Two, the ALJ found that Morrison's lumbar spine degenerative disc disease; cardiomyopathy with a history of ventricular tachycardia compensated by a defibrillator; history of chronic heart failure; coronary artery disease; obesity; chronic obstructive pulmonary disease ("COPD); major depressive disorder; and anxiety constituted severe impairments. The ALJ also considered Morrison's other impairments of erectile dysfunction and narcolepsy at Step Two, but found that they did not affect Morrison's residual functional capacity ("RFC") because they "either occurred before the alleged onset date of disability or presented no residual signs or symptoms expected to last at least twelve months." [DE 11 at 22].

The ALJ then concluded at Step Three that Morrison did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

3

listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. As part of her Step Three analysis, the ALJ assessed the four areas of Morrison's mental functioning known as paragraph B criteria. The ALJ found that Morrison has (1) mild limitations in understanding, remembering, or applying information; (2) mild limitations in interacting with others; (3) moderate limitations in concentration, persistence, and pace; and (4) moderate limitations in adapting or managing himself. [DE 11 at 24].

Before proceeding to Step Four, the ALJ assessed Morrison's residual functional capacity ("RFC"). A claimant's RFC is based on all the relevant medical and other evidence in his case record" and reflects the most he can still do despite his functional limitations. 20 C.F.R. § 404.1545(a). The ALJ found that Morrison has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), but could only frequently stoop, kneel, balance, and climb ramps and stairs; and occasionally crawl, crouch, and climb ladders, ropes, or scaffolds. The ALJ also found that Morrison should avoid concentrated exposure to extreme cold, humidity, dust, odors, fumes, and gases, and that he is only capable of performing simple and detailed one-to-five-step instructions.

When conducting an RFC analysis, an ALJ must consider all of a claimant's symptoms, their consistency with the objective medical evidence and other evidence in the record, and their intensity, persistence, and limiting effects in determining his functional limitations. 20 C.F.R. § 404.1529. Assessing a claimant's symptoms is a two-step process determining first whether a claimant's medically determinable impairments could be expected to reasonably cause the claimant's symptoms then

4

evaluating the intensity, persistence, and limiting effects of those symptoms on the claimant's functionality. SSR 96-4p. In this case, the ALJ found that Morrison's "medically determinable impairments could reasonably be expected to produce [his] alleged symptoms [but his] statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [DE 11 at 27–28].

Based on this RFC, the ALJ concluded at Step Four that Morrison was not able to perform his past relevant work as a casting machine operator. At Step Five, the ALJ found that based on his age, education, work experience, and RFC, Morrison had acquired work skills from his past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. Consequently, the ALJ held that Morrison had not been under a disability since the alleged onset date and denied him benefits.

C.  **Issues for Review**

Morrison challenges the ALJ's RFC analysis arguing that she erred generally by not incorporating limitations based on all his impairments, severe and non-severe.[1] More specifically, Morrison argues that the ALJ's consideration of his alleged symptoms was improper contending that she (1) drew improper inferences in relation to seeking treatment, (2) improperly overemphasized his activities of daily living, and (3) failed to properly account for his consistent and arduous work history.

---

[1] Morrison also suggests that the ALJ did not consider the combined impact of his severe and non-severe impairments on his functional limitations. However, Morrison never develops this as a separate argument. Therefore, the Court need not address it further.

5

## II. ANALYSIS

### A. Standard of Review

On judicial review, under the Social Security Act, the reviewing court must accept the Commissioner's factual findings as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). A court reviewing the findings of an ALJ may reverse only if the findings are not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). As such, the question for a reviewing court is not whether the claimant is disabled, but whether the ALJ "use[d] the correct legal standard and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

In reviewing an ALJ's decision, the district court must review the entire administrative record but must not reconsider facts, re-weigh evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Nevertheless, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack the requisite evidentiary support and require remand if it is

6

clear that the ALJ only selected and discussed evidence that favored his ultimate conclusion. *Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014) (citing *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994)). Additionally, an ALJ's decision must, at a minimum, articulate an analysis of the record that allows the reviewing court to trace the ALJ's reasoning and shows that the ALJ considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to her conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

### B. Limitations from All Impairments

Morrison asks the Court to find error in the ALJ's RFC determination arguing that she failed to adequately consider the entire record in reaching her conclusion. More specifically, Morrison contends the ALJ erred by failing to incorporate limitations in the RFC that reflect his moderate limitations in concentration, persistence, and pace and in adaptation established in the Step Three Listing analysis of his mental impairments. Additionally, Morrison contends that the ALJ did not include limitations on handling and fingering in his RFC despite medical evidence of shaking hands and a wrist fracture. Lastly, Morrison contends that the RFC does not address his unpredictable need for breaks during the work day to nap and use his nebulizer. None of these arguments overcome the deferential substantial evidence or demonstrate legal error. *See Briscoe*, 425 F.3d at 351.

7

### 1. Mental Limitations

At Steps Four and Five of the disability analysis, the hypothetical posed to the vocational expert ("VE") at the hearing before the ALJ and the RFC "must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *see also O'Connor-Spinner*, 627 F.3d at 619. As a result, the ALJ must consider functional limitations arising from the claimant's medically determinable, severe and non-severe impairments when crafting an RFC. SSR 96-8p. This includes all mental impairments and the limitations resulting from them, such as deficiencies in concentration persistence, or pace. *O'Connor-Spinner*, 627 F.3d at 619.

Citing *Yurt v. Colvin*, Morrison argues that the ALJ's "simple and detailed, one-to-five step instructions only" ("Simple Instruction") limitation did not account for his acknowledged moderate limitations in concentration, persistence, and pace and adaptation. In *Yurt*, the court rejected hypotheticals and RFCs that merely included a limitation to "simple, routine tasks and limited interactions with others" as inadequate reflections of the claimant's limitations in concentration, persistence, and pace. 758 F.3d at 858–59. Even if the ALJ's Simple Instruction limitation is assumed to equate with *Yurt*'s "simple routine tasks" limitation, Morrison's case can be distinguished.

The ALJ's hypothetical in *Yurt* merely stated that the claimant "could perform 'unskilled task[s] without special considerations,'" which the court found insufficient to ensure that the VE's testimony accounted for the claimant's mental impairments. *Id.* at 859. Here, the hypothetical to the VE explicitly included the Simple Instruction

8

limitation. [DE 11 at 74]. Moreover, a medical expert, Dr. Ellen Rozenfeld, testified immediately before the VE at the hearing and opined that Morrison had moderate limitations in concentration, persistence, and pace as well as adaptation and translated those into a statement hat he was capable of "one to five-step instructions." [DE 11 at 71]. Thus, the hypothetical and RFC were the same and the VE had the added benefit of hearing Dr. Rozenfeld's testimony using the same language in her opinion leaving no reason to suspect that the VE might be unaware of the limitations arising from Morrison's mental limitations.

The ALJ's RFC is also supported by the rest of her thorough consideration of Morrison's own testimony and the medical evidence in the record. This includes discussion of Morrison's alleged pain. While it is true that Dr. Rozenfeld admitted only considering Morrison's mental impairments, and not his pain, in reaching her conclusions, the ALJ's decision carefully reflects both subjective and objective evidence regarding Morrison's pain. Morrison may not agree with the ALJ's interpretation of the evidence, but that does not mean that the ALJ failed to meet her burden of supporting her decision with substantial evidence.

### 2. Handling and Fingering Limitations

Morrison also points the Court toward evidence in the record that he argues supports handling and fingering limitations not reflected in the RFC.[2] Specifically, Morrison notes that at least two health care providers reported that Morrison had

---

[2] Notably, Morrison makes no recommendation as to what the handling and fingering limitations he believes are warranted should be.

9

shaking hands and that he had fractured his right wrist, which was repaired with a plate and screws. The Commissioner does not dispute these facts. However, the Commissioner correctly challenges the impact of this evidence on the RFC analysis.

First, the Commissioner explains that Morrison's two documented instances of shaking hands were two months apart. With no further evidence of trembling issues, the evidence does not meet the 12-month requirement necessary for a disability finding. Second, the record includes no evidence of long-term limitations arising from the wrist fracture. Third, Morrison did not file a reply brief leaving the Commissioner's interpretation of this evidence undisputed. Thus, any error is harmless.

### 3. Limitation for Breaks

Morrison lastly attacks the ALJ's RFC for lack of any limitation to account his need to nap related to his narcolepsy impairment and to nebulize his pulmonary medications to treat his asthma and COPD. The Commissioner acknowledges that Morrison testified at the ALJ hearing about his need for breaks. Yet once again, the Commissioner explains that the evidence in the record regarding Morrison's narcolepsy does not span a 12-month period or predict that the narcolepsy will last 12 months. The Commissioner also challenges the effect of the nebulizer breaks on Morrison's ability to work without evidence of how much time the treatments require. With no rebuttal, Morrison has not overcome the Commissioner's arguments.

Thus, remand is not warranted regarding the limitations incorporated into the ALJ's RFC determination, which is supported by substantial evidence and was reached without harmful legal error.

**C.     Subjective Symptom Analysis**

**1.     Inference Regarding Failure to Seek Treatment**

Morrison argues that the ALJ improperly weighed examples of his failure to seek treatment for his impairments against him in evaluating the limiting effects of his subjective symptoms on his ability to work. An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (quoting SSR 96-7p[3]) (internal quotations omitted). Moreover, "a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's [allegations regarding his symptoms, [but] an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (citing SSR 96-7p).

Here, the ALJ noted that Morrison had been referred for treatment on several of his impairments, especially his mental impairments, but that he either did not follow up or did so a long time after the referral was made. The ALJ acknowledged Plaintiff's testimony that he was unable to afford treatment despite having health insurance through his wife's employer because of a high deductible and limitations on his coverage. Thus, Morrison's argument that the ALJ failed to consider this important explanation for not seeking treatment is misplaced. In fact, the ALJ's consideration of

---

[3] SSR 16-3p clarifies SSR 96-7p by removing the term "credibility" from the subjective symptom analysis to avoid confusion with issues of truthfulness, but directs the continued use of the two-step process for evaluating the claimant's allegations of symptoms and their resulting limitations.

Morrison's financial situation is further evidenced by her comparison of Morrison's choice to promptly pursue medical referrals to support his DIB application to his decisions to delay or avoid regular treatment options to mitigate his symptoms.

The ALJ also noted Morrison's failure to explore or use any low-cost or no-cost medical care options to address what he claims to be very serious and disabling conditions. Morrison challenges the ALJ's reliance on this fact arguing that there is no evidence in the record that any such affordable options were geographically accessible to him and generalizing, without support, that free clinics are typically unavailable to individuals like Morrison who have health insurance. Even assuming such care was not accessible, the ALJ's argument focuses more on Morrison's apparent unwillingness to do what was necessary to improve his allegedly disabling conditions, citing to multiple examples of Morrison's non-compliance with medical advice. While this factor alone cannot be determinative, the ALJ relied on substantial evidence to support her conclusion and considered multiple factors when assessing how to weigh Morrison's allegations regarding his symptoms.

### 2. Emphasis on Activities of Daily Living

Morrison then challenges the ALJ's conclusion that his reported "activities of daily living suggest a greater degree of functional capability than claimed." [DE 11 at 28]. A claimant's activities of daily living, on their own, do not reflect his ability to engage successfully in full-time work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005). Morrison simply argues, without any explanation, that the ALJ's decision "contravenes the *Bjornson*

principles" that even disabled individuals will work to overcome their impairments to care for themselves, their homes, and their families, but can do those things at their own pace and with their own choice of accommodations—luxuries unavailable to full time employees.

While the ALJ may not have cited to *Bjornson* in her decision, she clearly understood its import as she used Morrison's activities of daily living as one of many factors in assessing the weight given to his subjective symptoms. Moreover, the ALJ compared the significant physical and mental demands of the activities of daily living Morrison himself admitted to the demands raised through the RFC. In so doing, she supported her decision with substantial evidence without running afoul of *Bjornson*.

### 3. Consistent Work History

Finally, Morrison argues that the ALJ failed to consider his consistent and arduous work history in assessing the Morrison's testimony about limited effects of symptoms. Indeed, a claimant's consistent work history weighs in favor of accepting his perspective on the limited effects of his subjective symptoms. *Summers v. Berryhill*, 864 F.3d 523, 589 (7th Cir. 2017). Yet, work history is only one, non-dispositive factory among many and need not be explicitly discussed by an ALJ when considering the claimant's subjective symptom allegations. *Id.* at 528–29. Once again, Morrison's focus on a single factor and failure to recognize the ALJ's full analysis presenting a wide range of evidence from the record that highlighted inconsistencies between that record and Morrison's allegations dooms his argument.

Thus, the ALJ's analysis of Morrison's subjective symptom allegations is supported by substantial evidence and presents the "logical bridge" that allows the Court to track her reasoning even if certain pieces of evidence were not explicitly discussed. *See Minnick*, 775 F.3d at 935; *O'Connor-Spinner*, 627 F.3d at 618.

## V. CONCLUSION

For the reasons stated above, the Court now **AFFIRMS** the Commissioner's decision finding Morrison not disabled and denying disability benefits under the Social Security Act. The Clerk is **ORDERED** to enter judgment in favor of the Commissioner.

**SO ORDERED** this 29th day of March 2019.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge